15 F.3d 1084
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Mark R. FRIEDLAND; Kittrich Corporation, Plaintiffs-Appellants,
v.
Liberty Mutual Insurance Company; Liberty Mutual Fire
Insurance Company, Defendants-Appellees.
 No. 92-55741.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Decided Jan. 5, 1994.
As Amended March 29, 1994.
 
 Before: BROWNING, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Friedland and Kittrich Corporation (collectively "Friedland") challenge the district court's Rule 12(b)(6) dismissal of their complaint against Liberty Mutual Insurance Co. ("Liberty"). Friedland contends that the district court erred in concluding that the absence of an allegation of publication in the underlying complaint ("the Leberman action") provided grounds for dismissing its complaint alleging that Liberty breached its contractual duty to defend under the "personal injury" provisions of a CGL policy. Friedland also contends that it should have been allowed leave to amend its complaint. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 * We review de novo Rule 12(b)(6) dismissals. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc). Our review is limited to the contents of the complaint, and the allegations are accepted as true and are construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). Dismissal is proper if "it appears beyond doubt" that the plaintiff cannot prove facts to support a claim entitling relief. Id. at 1245. We review the denial of leave to amend for an abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991).
 
 II
 
 4
 Friedland contends that the district court's dismissal of its action was based on an erroneous application of California law. Specifically, Friedland argues that dismissal was contrary to the teaching of CNA Casualty of California v. Seaboard Surety Co., 176 Cal.App.3d 598 (1986).
 
 
 5
 * In the seminal case of Gray v. Zurich Insurance Co., the California Supreme Court held that an insurer's duty to defend arises from a claim which "potentially seeks damages within the coverage of the policy." 65 Cal.2d 263, 275 (1966) (emphasis omitted). Whether the duty arises is analyzed on the basis of potential liability arising from facts available to the insurer, from the face of the complaint or other sources, at the time of the tender of the defense. CNA Casualty, 176 Cal.App.3d at 605. We look to the facts alleged, rather than to the formal theory of liability in the underlying complaint. Id. at 607. Any doubt that the duty exists should be resolved in favor of the insured. Eichler Homes v. Underwriters at Lloyd's, 238 Cal.App.2d 532, 538 (1965).
 
 
 6
 Leberman's complaint explicitly sought damages only for breach of contract and for violation of California's Fair Housing and Employment Act (Government Code Sec. 12940). It is undisputed that neither cause of action was covered under the relevant CGL policy. At p 23, in support of Leberman's age and physical handicap discrimination claim, the complaint alleged that Friedland gave "pretextual and untrue reasons for the termination ... in that Plaintiff's physician never said that Plaintiff could not drive or was unable to perform his job duties." At p 26, the complaint alleged that Friedland's conduct resulted in harm to Leberman, including, inter alia, "[i]mpairment and damage to Plaintiff's good name by causing him to be discharged with the untrue implication to all future prospective employers that he was physically unable to handle his job functions and had been discharged for incompetence or unsatisfactory performance."
 
 
 7
 There is no dispute that an action for defamation would be within the coverage of the relevant CGL policy and, a fortiori, would have given rise to Liberty's duty to defend. There was, however, no allegation anywhere in Leberman's complaint that the termination letter had been published. See Baker v. Los Angeles Herald Examiner, 42 Cal.3d 254, 259 (1986), cert. denied, 479 U.S. 1032 (1987). Friedland's complaint also failed to allege that it at any time presented extrinsic evidence to Liberty regarding the publication of the termination letter.
 
 
 8
 Instead, Friedland relies on McKinney v. County of Santa Clara, 110 Cal.App.3d 787 (1980). However, we read McKinney as standing for the proposition that the publication element of defamation is met only once the foreseeable republication has been made by the person defamed operating under a strong compulsion to republish the defamatory statement, and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicated it to the person defamed. See id. at 797-98. Friedland may or may not have had reason to believe that Leberman would be under a strong compulsion to disclose the contents of the allegedly defamatory letter to a third party. Because Leberman did not allege that he republished the statement, see CNA Casualty, 176 Cal.App.3d at 610, his complaint provided no factual predicate to support the inference that he was seeking damages for defamation. See Hurley Constr. Co. v. State Farm Fire & Casualty Co., 10 Cal.App.4th 533, 538 (1992) (an insured may not speculate about unpled third party claims in order to manufacture coverage). Under these circumstances, we conclude that the facts alleged in Leberman's complaint were not of "the nature and kind" covered by the CGL policy. Gray, 65 Cal.2d at 274.
 
 B
 
 9
 CNA Casualty is not to the contrary. Friedland is correct that CNA Casualty stands for the proposition that when there is a pleading error, or when the underlying complaint is otherwise technically defective, the duty to defend arises if the underlying facts are sufficient to apprise the insurer that the complaint can be amended to properly set forth an explicit cause of action. CNA Casualty, 176 Cal.App.3d at 610. Unlike the complaint at issue in CNA Casualty which alleged, inter alia, that the insured misappropriated property interests and filed false claims within the context of a federal antitrust action, see id. at 611-12, Leberman's complaint simply could not support the inference that the facts necessary to allege a covered cause of action had occurred.
 
 
 10
 At most, CNA Casualty teaches that the absence of a properly pleaded cause of action in the underlying complaint is of no moment when the facts alleged provide grounds for concluding that a rectifying amendment is likely. See id. at 610-12. CNA Casualty governs the amendment of inadequate pleadings, not the failure to allege the occurrence of historical facts giving rise to a covered claim. In other words, in order to give rise to an insurer's duty to defend, the complaint must provide some grounds for believing that a covered cause of action has accrued at the time of tender.
 
 
 11
 Even if CNA Casualty can be construed for the much broader proposition urged by Friedland, we find more persuasive several contrary decisions construing the defense duty under California law.[1] In Lunsford v. American Guarantee & Liability Insurance Co., 775 F.Supp. 1574 (N.D.Cal.1991), aff'd in part and rev'd in part, 1994 U.S.App. Lexis 915 (9th Cir. January 10, 1994), the insurer rejected tender of an action containing abuse of process allegations on the basis that the allegations did not state a covered claim for malicious prosecution. The district court concluded that the insurer did not breach its duty to defend, reasoning that an essential element of the covered claim, namely the termination of a prior action in the defendant's favor, would occur only after the termination of the present underlying action. Id. at 1579, 1581. A recent decision by a California appellate court has adopted the reasoning in Lunsford. See Coit Drapery Cleaners, Inc. v. Sequoia Insurance Co., 14 Cal.App.4th 1595, 1604 (1993) (citing Lindsey v. Admiral Insurance Co., 804 F.Supp. 47 (N.D.Cal.1992), and, a fortiori Lunsford, favorably for proposition that the underlying complaint must plead every essential element).
 
 III
 
 12
 Friedland contends that the district court erred in dismissing its action without leave to amend. Specifically, Friedland maintains on appeal that it published a defamatory remark in response to a customer who asked about the circumstances surrounding Leberman's termination. Friedland also contends that discovery materials demonstrated that Leberman's attorney was pursuing a McKinney type of inquiry.
 
 
 13
 Neither of these additional facts was brought to the attention of the district court. On the basis of the facts brought before it, the district court did not abuse its discretion in concluding that amendment of Friedland's complaint would be futile. See Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). We will not consider additional facts for the first time on appeal. See Roberson v. United States, 382 F.2d 714, 717-18 (9th Cir.1967). AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The California Supreme Court has not addressed the question presented in this appeal. Friedland's argument that Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287 (1993), controls this appeal is without merit. Montrose Chemical determined that the trial court erred in denying the insured summary judgment on the basis that the underlying CERCLA action was "neutral" on the question whether the insured's discharge of pollutants was "an occurrence" within the meaning of the relevant policy. 6 Cal.4th at 304. Although it is true that Montrose Chemical reiterated the principle that "the insurer may not decline to defend a suit merely because it is devoid of merit," 6 Cal.4th at 298, the Supreme Court did not obviate the logically anterior requirement that the underlying complaint seek damages for injuries "of the nature and kind" covered by the relevant policy. Id. at 303 (citing Giddings v. Industrial Indemnity Co., 112 Cal.App.3d 213, 216-17 (1980)). There was no question in Montrose Chemical that the acts of environmental contamination alleged in the underlying action potentially sought recovery for, inter alia, damages to land pursuant to CERCLA, even if it remained unclear whether the action would ultimately give rise to the insurer's duty to indemnify